John C. Garde, Esq.- N.J. Attorney ID #014171986
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for Defendant Johnson & Johnson

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DANIEL EDLEY and ROGER EDLEY** individually, as personal representatives of the Estate of Laszlo "Louis" Edley, deceased on behalf of said Estate; and as representative of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**JOHNSON & JOHNSON**; John/Jane Doe Attorneys 1-1000, and John/Jane Doe J&J Corporate Members 1-1000,<br><br>Defendants. | **Civil Action No. 3:22-cv-2970**<br><br>**NOTICE OF REMOVAL** |

**TO: THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

**PLEASE TAKE NOTICE** that, without submitting to the jurisdiction of this Court, and without waiving any available defenses, defendant Johnson & Johnson ("J&J"), by and through its undersigned attorneys and pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, hereby removes this action from the Superior Court of New Jersey, Law Division, Middlesex County, where it is currently pending, to this Court.[1] As required under 28 U.S.C. § 1446(a), a short and plain statement of the grounds for removal is set forth below:

[1] This putative class action is subject to the automatic stay that is presently in effect in the Chapter 11 cases of Imerys Talc Vermont, Inc. and its affiliated debtors Imerys Talc America, Inc., and Imerys Talc

1. On May 9, 2022, Plaintiffs Daniel and Roger Edley ("Plaintiffs"), purporting to sue individually, on behalf of the estate of Laszlo "Louis" Edley, and on behalf of others similarly situated, commenced this putative class action by filing a Complaint against J&J (and two thousand John/Jane Does) in the Superior Court of New Jersey, Law Division, Middlesex County, captioned *Daniel Edley and Roger Edley, individually, as personal representatives of the Estate of Laszlo "Louis" Edley, deceased on behalf of said Estate, and as representative of others similarly situated v. Johnson & Johnson, John/Jane Doe Attorneys 1-1000, and John/Jane Doe Corporate Members 1-1000*, Case No. MID-L-002204-22 (the "State Court Action").

2. As required by 28 U.S.C. 1446(a), attached as **Exhibit A** are true and correct copies of all process, pleadings, orders, and other papers or exhibits filed in the state court.

3. Plaintiffs served J&J with the State Court Action on May 9, 2022.

4. Removal is therefore timely because it was completed within the removal period (*i.e.*, 30 days from service of process). *See* 28 U.S.C. § 1446(b)(1) (allowing removal by defendant within 30 days after receipt of a complaint "through service or otherwise").

5. This action is properly removed to the United States District Court for the District of New Jersey, and venue is proper in this District, because the Superior Court of New Jersey, Law Division, Middlesex County, in which this action was originally filed, is within the District of New Jersey. *See* 28 U.S.C. §§ 110, 1441(a).

6. Pursuant to 28 U.S.C. § 1446(d), written notice of removal of this action will be promptly served upon Plaintiffs' counsel, and a Notice of Removal to Federal Court will be filed in the State Court Action.

---

Canada, Inc., which are now pending in the United States Bankruptcy Court for the District of Delaware under Case No. 19-10289. As such, J&J is removing this case now solely to preserve its right to a federal forum.

7. The Court has jurisdiction under the Class Action Fairness Act of 2005, Pub L. 109-2, 119 Stat. 4 (2005) ("CAFA"), codified at, *inter alia*, 28 U.S.C. §§ 1332(d), 1441(a), 1452, and 1453. As detailed below, this is a putative class action, comprised of more than 100 members, which places in controversy more than $5 million, and there is minimal diversity between the parties. *See infra* ¶¶ 16-32.

**PLAINTIFFS' COMPLAINT**

8. Plaintiffs allege that they are citizens of the State of New Jersey. Compl. ¶ 22.

9. The Complaint names J&J as a defendant, and alleges that J&J is a New Jersey corporation with a principal place of business in New Jersey. Compl. ¶ 27.

10. The Complaint also names as defendants 1,000 "John/Jane Doe Attorneys," who are "fictitiously named defendants who are members of J&J's in-house legal department or were outside counsel to J&J, (including law firms responsible for such counsel), their exact identities being currently unknown to Plaintiffs." Compl. ¶ 42. Plaintiffs allege that the John/Jane Doe Attorneys "either singularly, jointly and/or in concert with others … made, implemented, aided or abett[ed], materially assisted and/or failed to stop or correct the scheme of false representations" that Defendants are alleged to have engaged in. *Id.* The Complaint does not make any allegations regarding the residence, domicile, or citizenship of the John/Jane Doe Attorneys.[2]

11. The Complaint also names as defendants 1,000 "John/Jane Doe J&J Corporate Members," who are "fictitiously named defendants that are J&J's Directors, officer and/or

---

[2] Because the identity of these defendants is unknown, J&J does not need to their consent to remove this case. *See Green v. Am. Online (AOL)*, 318 F.3d 465, 470 (3d Cir. 2003) (rejecting argument that "removal was defective because the John Doe defendants did not join the notice of removal" because "the general rule that all defendants must join in a notice of removal may be disregarded where … the non-joining defendants are unknown").

employees, their exact identities being currently unknown to Plaintiffs." Compl. ¶ 43. Plaintiffs allege that the John/Jane Doe Corporate Members "either singularly, jointly, and/or in concert with others, both inside and external to J&J, knowingly … approved, directed, authorized, condoned, ratified, made, implemented, and/or failed to stop or correct the scheme of false representations" that Defendants are alleged to have engaged in. *Id.* The Complaint does not make any allegations regarding the residence, domicile, or citizenship of the John/Jane Doe Corporate Members.

12. Plaintiffs allege that J&J and these unnamed defendants engaged in a scheme of fraud, spoliation, and concealment in relation to a number of historical personal injury lawsuits involving allegations of injury resulting from exposure to asbestos via industrial talc that was mined, milled, sold, or distributed by J&J (or its former subsidiary Windsor Minerals, Inc.). Plaintiffs—whose deceased father was a plaintiff in one of these underlying personal injury lawsuits—allege that J&J's purported misconduct deprived them, and other similarly situated personal injury plaintiffs, of the "evidence needed to establish and adjudicate asbestos related injury claims," which resulted in the dismissal (whether voluntary or involuntary) of these underlying lawsuits, "without full and fair compensation being paid to the asbestos injury claimants." Compl. ¶¶ 1-21.

13. In their Complaint, Plaintiffs purport to assert common law claims for "fraudulent concealment and spoliation" (Count I), "fraud and deceit" (Count II), and "fraud upon courts" (Count III). Plaintiffs do not specify the law under which they purport to bring Counts II and III, but purport to bring Count I "under the law of New Jersey … or such other law the Court finds applicable for spoliating and fraudulent concealing evidence." Compl. ¶ 183.

14. Plaintiffs seek to litigate their claims on behalf of themselves and a proposed class

defined as "[a]ll Persons within the United States and its territories (or where a person is or was deceased, the estate of such person), who prior to the commencement date of this litigation: (a) filed a lawsuit (or was the subject of a survival or wrongful death action) against J&J, Windsor and/or a Third Party ("Underlying Lawsuit") to obtain asbestos-related bodily injury, survival action, and/or wrongful death action compensation arising from or involving claimed exposure to J&J/Windsor Industrial Talc; and (b) who either, (i) after the suit was filed, voluntarily dismissed or terminated the Underlying Lawsuit or any claim in the Underlying Lawsuit that was based on claimed asbestos exposure to Industrial Talc products mined, milled, sold, and distributed prior to January 6, 1989, by J&J, Windsor or Windsor's corporate predecessor, … including any voluntary dismissal or release of claims due to settlement; or, (ii) after the lawsuit was filed, had their Underlying Lawsuit or any claim in the Underlying Lawsuit that was based on claimed asbestos exposure from J&J/Windsor Industrial Talc, involuntarily dismissed as to J&J, Windsor and/or a Responsible Third Party." Compl. ¶ 156.

15. Among other forms of relief, Plaintiffs seek (i) a declaratory determination and judgment that J&J engaged in fraudulent concealment and spoliation of evidence, engaged in fraud and deceit, and committed a fraud upon the courts; (ii) injunctive relief requiring the execution of a "notice program paid for by Defendants informing Class Members or their representatives of the pendency of this Action, J&J's alleged misconduct, and their rights to proceed against Defendants to pursue the cases of action set forth herein"; (iii) an injunction or decree "imposing a constructive trust upon Defendants' property, and requiring Defendants render an accounting to the Court of all fees, revenues, costs, insurance proceeds, and expense savings relating to Plaintiffs' and absent Class Members' asbestos injury claims"; (iv) a "declaration of Defendants' liability for disgorgement or restitution of revenues, profits, and

money unjustly earned from the commission of the frauds upon the courts, upon Plaintiffs' and Members of the Class and/or by the commission of proscribed activities above"; and (v) "compensatory and punitive damages to Plaintiffs and the Class." *See* Compl., Demands for Relief.

**BASIS OF FEDERAL JURISDICTION UNDER**
**THE CLASS ACTION FAIRNESS ACT**

16. This action is removable to this Court because federal diversity jurisdiction exists over Plaintiffs' claims pursuant to CAFA.

17. Congress enacted CAFA to enlarge federal jurisdiction over class actions. CAFA applies to any civil action commenced on or after February 18, 2005. This action was commenced on May 9, 2022, well after CAFA's effective date.

18. CAFA provides that a putative class action against a non-governmental entity may be removed to federal court if: (a) the number of proposed class members is not less than 100; (b) any member of the proposed class is a citizen of a state different from any defendant; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5) & 1453(b). As set forth below, each of these requirements is satisfied.

**A. There are More Than 100 Putative Class Members**

19. CAFA's first requirement, which is that the proposed class contain at least 100 members, is satisfied here. *See* 28 U.S.C. §§ 1332(d)(5).

20. Plaintiffs claim to seek relief on behalf of "***thousands*** of asbestos claimants" whose claims were allegedly wrongfully dismissed as a result of J&J's alleged misconduct. Compl. ¶¶ 1 (emphasis added). They allege that the members of the class "are so numerous that their individual joinder is impracticable" and state that they believe the proposed class contains

"***many thousands***" of members. Compl. ¶ 161 (emphasis added). Plaintiffs further allege that "thousands of cases were wrongfully dismissed." Compl. ¶¶ 3, 8, 14, 17-18, 43.

21. Accordingly, based on the allegations in Plaintiffs' complaint, the requirement that the proposed class contain at least 100 members is satisfied. *See Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 505 (3d Cir. 2014) (if a plaintiff "explicitly assert[s]" in the complaint that there are "hundreds" of class members, a defendant is "entitled to rely on this fact as an admission in favor of jurisdiction"); *Adighibe v. Clifton Telecard Alliance*, 2008 U.S. Dist. LEXIS 28322, at *8-9 (D.N.J. Apr. 7, 2008) (holding that plaintiff's "allegations of the Complaint" that there were "hundreds" of class members was "sufficient" to meet CAFA's requirement that the class contain at least 100 members).

**B. Minimal Diversity Exists Between the Parties**

22. CAFA's second requirement—that any one member of the proposed class be a citizen of a state different from any defendant—is also satisfied. *See* 28 U.S.C. § 1332(d)(2) (district courts "shall have original jurisdiction" where, *inter alia*, "any member of a class of plaintiffs is a citizen of a State different from any defendant").

23. J&J is a New Jersey corporation with its principal place of business in New Jersey. *See* Compl. ¶ 27. J&J is therefore a citizen of New Jersey. *See* 28 U.S.C. § 1332(c)(1). Accordingly, the minimal diversity required by CAFA exists if any member of the putative class is a citizen of a state other than New Jersey.

24. "[C]ourts generally look to the plaintiff's proposed class definition to determine the citizenship of putative class members for diversity jurisdiction." *Gallagher v. Johnson & Johnson Consumer Cos., Inc.*, 169 F. Supp. 3d 598, 603–04 (D.N.J. 2016). Here, Plaintiffs' proposed class definition encompasses "[a]ll persons within the United States and its territories" whose claims relating to industrial talc products were either voluntarily or involuntarily

dismissed as a consequence of J&J's alleged misconduct. Compl. ¶ 156. Plaintiffs also point to specific cases filed in Delaware, Ohio, and California as examples of actions whose dismissal J&J allegedly secured as a result of the alleged fraudulent scheme. Compl. ¶¶ 88-89, 91, 95. The plaintiffs in these Delaware, Ohio, and California actions are therefore members of the proposed class defined in the Complaint.

25. Given that Plaintiffs seek to represent a nationwide class that necessarily would include citizens of states other than New Jersey, and has explicitly identified underlying cases filed in jurisdictions other than New Jersey as among those wrongfully dismissed as a result of the alleged conduct at issue, the putative class necessarily includes at least one plaintiff who is not a citizen of New Jersey. *See Margulis v. Resort Rental, LLC*, 2008 WL 2775494, at *2 (D.N.J. July 14, 2008) (concluding that, because the "plaintiff allege[d] a nationwide class," the existence of minimal diversity was established by the required preponderance of the evidence); *Rosas v. Carnegie Mortg., LLC*, 2012 U.S. Dist. LEXIS 71262, at *14 (C.D. Cal. May 21, 2012) ("Because the complaint alleges a nationwide class, minimal diversity necessarily exists" under CAFA); *see also Hoffman v. Lumina Health Prods.*, 2013 U.S. Dist. LEXIS 152822, at *7 (D.N.J. Oct. 24, 2013) (explaining that CAFA defines "class members" as those "who ***fall within the definition*** of the proposed or certified class") (emphasis added). Accordingly, CAFA's minimal diversity requirement is satisfied.

**C. <u>The Amount in Controversy Exceeds $5 Million</u>**

26. CAFA's final requirement—that the amount in controversy, exclusive of interest and costs, exceed $5 million—is also satisfied. *See* 28 U.S.C. § 1332(d)(2). In evaluating this requirement, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" $5 million. *Id.* § 1332(d)(6).

27. Although J&J disputes the allegations in the Complaint and denies all liability and

damages, Plaintiffs' allegations and prayer for relief, irrespective of their merits, place in controversy an amount greater than $5 million.

28. Where, as here, the complaint does not set forth a specific sum of damages sought, a defendant need only make a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also* 28 U.S.C. § 1446(a) (stating that a defendant's notice of removal need only contain "a short and plain statement of the grounds for removal"). A defendant does not need to make "evidentiary submissions" to establish the amount in controversy under CAFA. *Dart*, 574 U.S. at 84.

29. "In removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court." *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007) (quoting *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004)). Here, Plaintiffs allege that J&J fraudulently obtained dismissal of "thousands of cases … filed by people with asbestos-related injuries, including asbestosis, lung cancer, and mesothelioma." Compl. ¶¶ 3, 98. Plaintiffs allege that these "thousands" of putative class members were "damaged" as a result of J&J's conduct, "including [through] the [loss of the] opportunity to recover compensation for their respective economic damages and losses." Compl. ¶¶ 165, 181. According to the Complaint, these damages include, but are not limited to, the "loss of their underlying asbestos claims, the expenses and costs of proceeding without [the allegedly lost] evidence, the expenses and costs incurred in the effort to replace, locate, or identify evidence, and/or the cost of prosecuting this case to prove fraud, fraudulent concealment, and spoliation of evidence." Compl. ¶ 181.

30. Plaintiffs allege there are "many thousands" of class members. Compl. ¶ 161.



ME1 40617788v.1

Even if only 2,000 putative class members exist—and, given Plaintiffs' expansive class definition and allegations regarding conduct that allegedly occurred across several decades, there are likely more—each of the underlying personal injury lawsuits associated with those 2,000 class members need only have been worth an average of $2,500 in damages for this case to satisfy CAFA's amount-in-controversy requirement based on lost recovery for "their underlying asbestos claims" alone. *See Judon*, 773 F.3d at 505 (holding that, where the plaintiff had alleged a putative class consisting of "hundreds of members," the defendant "was entitled to rely on this fact" and compute the amount in controversy based on a class size of 200 plaintiffs).

31. Here, it is virtually certain that the putative class members' underlying personal injury claims relating to asbestos disease sought an average award of compensatory damages far in excess of $2,500—to say nothing of the punitive damages that many (if not all) of those litigants also sought in their underlying personal injury suits. *See, e.g.*, Thomas W. Tardy III & Taylor H. Wilkins, Commentary, *Asbestos: An Immature Tort (The Contrarian View)*, 32 Mealey's Litig. Rep.: Asbestos 1, 2 (Sept. 13, 2017) (noting that "[t]he average jury award for asbestos plaintiffs nationally during 2008-2016," after remittiturs, was "$6.3 million"); Kevin M. Warsh, *Corporate Spinoffs and Mass Tort Liability*, 1995 Colum. Bus. L. Rev. 675, 683 (1995) (noting that the average asbestos-related lung cancer settlement was $224,000 in 1992); Louis DiGiovanni, Note, *New York City's Schools Asbestos Debacle: An Administrative Approach to the Problem of Faulty School Inspections and a Possible New Round of Asbestos Litigation*, 6 Fordham Envtl. L.J. 79, 86 (1995) (observing that, in the mid-1980's, average asbestos settlements ranged from $54,000 for asbestosis to $265,000 for mesothelioma, with an overall average settlement of $64,000); Gideon Mark, *Issues in Asbestos Litigation*, 34 Hastings L. J. 871, 902 (1983) (noting that, as of 1983, the "average award in asbestos trials to date" was

$82,000). In addition to this compensatory relief, which already exceeds $5 million, Plaintiffs also seek an award of punitive damages in *this* case (in addition to whatever punitive damages class members may have lost out on in their underlying cases), as well as far-reaching equitable relief that would require the creation of a "robust notification system" and the accounting and disgorgement of "all fees, revenues, costs, insurance proceeds, and expense savings relating to" class members' asbestos injury claims and of the "revenues, profits and money unjustly earned from the commission of the frauds upon the courts." Compl. ¶¶ 19, 182-183, Demands for Relief; *see also Judon*, 773 F.3d at 508 n.12 ("[P]unitive damages, when available under applicable law, may be considered by a court in assessing federal jurisdiction"); *Excel Pharm. Servs., LLC v. Liberty Mut. Ins. Co.*, 825 Fed. App'x 65, 68 (3d Cir. 2020) (rejecting argument that "there is no amount of money in controversy because [plaintiff] is merely seeking declaratory and injunctive relief" and holding that CAFA's $5 million amount-in-controversy requirement was satisfied by estimating costs associated with requested injunctive relief). This additional relief, if granted, would easily expose J&J to millions of dollars in additional costs.

32. Accordingly, J&J has plausibly alleged that the amount in controversy exceeds—indeed, far surpasses—CAFA's $5 million jurisdictional threshold.

**D. <u>None of CAFA's Jurisdictional Exceptions Applies Here</u>**

33. To effect removal, J&J's only burden is to plausibly allege that CAFA's three jurisdictional requirements are met. J&J does not have the burden to allege or prove the inapplicability of CAFA's jurisdictional exceptions found in 28 U.S.C. § 1332(d)(3) and (d)(4). The burden of asserting and proving the applicability of those exceptions lies squarely with Plaintiffs. *See Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 154 (3d Cir. 2009) (holding that the "plaintiff bears the burden of demonstrating an exception to removability" under CAFA); *Roberts v. Ribeca Auto., Inc.*, 2018 U.S. Dist. LEXIS 221150, at *11 (D.N.J. Dec. 28, 2018)

(same).

34. For the avoidance of doubt, however, none of CAFA's jurisdictional exceptions could possibly apply in this case.

i. ***The "Local Controversy" Exception Does Not Apply***

35. 28 U.S.C. § 1332(d)(4)(A)—the so-called "local controversy" exception—requires a district court to decline jurisdiction over a removed class action under certain circumstances. However, there are at least two reasons why this exception does not apply here.

36. First, the "local controversy" exception applies only where the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(III).

37. Here, Plaintiffs seek certification of a nationwide class and allege that class members' injuries were incurred around the country, not just in New Jersey. According to Plaintiffs, their case is "about J&J's [alleged] misconduct and fraud upon litigants and courts while defending asbestos personal injury cases … in state and federal courts ***around the country***." Compl. ¶ 2 (emphasis added). Plaintiffs allege that J&J improperly obtained dismissal of these actions "***across the nation***," and specifically refer to alleged misconduct in relation to lawsuits in Ohio, Delaware, and California. Compl. ¶¶ 14, 88-89, 91, 95 (emphasis added). The injuries that Plaintiffs seek to redress are the "injuries to the judicial process and corresponding abridgment of the economic, property, and personal rights" of class members that allegedly resulted from conduct that occurred in relation to these lawsuits in courts across the nation. Compl. ¶¶ 19, 181. Therefore, to the extent J&J's conduct caused any injury (which J&J denies), by Plaintiffs' own admission, that injury was distributed "around the country," and did not occur "principal[ly]" in New Jersey. *See Kaufman v. Allstate Ins. Co.*, 2008 U.S. Dist. LEXIS 71245, at *9 (D.N.J. Sept. 9, 2008) ("The local controversy exception is inapplicable

where defendants' conduct 'could be alleged to have injured [persons] throughout the country or broadly throughout several states'"); *Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006) (same).

38. Second, the "local controversy exception" applies only if "greater than two-thirds" of all class members are citizens of New Jersey. 28 U.S.C. § 1332(d)(4)(A)(i)(I).

39. Here, Plaintiffs will be unable to establish that more than two-thirds of all class members are citizens of New Jersey. Again, Plaintiffs seek certification of a nationwide class, and Plaintiffs have alleged that class members filed their claims against J&J "across the nation." The Complaint provides no reason to think that New Jersey would account for a disproportionate share of asbestos personal injury suits in relation to its population—let alone more than two-thirds of such suits filed nationwide. *See Ellithy v. Healthcare Training Inst., Inc.*, 2013 U.S. Dist. LEXIS 89959, at *15 (D.N.J. June 21, 2013) (holding that plaintiffs failed to establish that two-thirds of class members were citizens of New Jersey in part because "Plaintiffs did not limit the putative class to … current residents and/or citizens of New Jersey"); *Lee v. Cent. Parking Corp.*, 2015 U.S. Dist. LEXIS 177900, at *41-43 (D.N.J. May 28, 2015) (same, where plaintiffs "failed to provide any evidence of citizenship" and "failed to define the class as New Jersey citizens").

40. For both of these reasons, this is not "a controversy that uniquely affects a particular locality to the exclusion of all others." *Vodenichar v. Halcon Energy Props.*, 733 F.3d 497, 508 n.11 (3d Cir. 2013). Accordingly, the "local controversy" exception does not apply.

***ii. The "Home State" Exception Does Not Apply***

41. 28 U.S.C. § 1332(d)(4)(B)—the so-called "home state" exception—requires a district court to decline jurisdiction over a removed class action under certain specified circumstances. For this exception to apply, both "two-thirds or more" or class members ***and***

each of the "primary defendants" must be "citizens of the State in which the action was originally filed." Neither of these requirements is met here.

42. First, as noted above, there is no basis to conclude that over two-thirds of all class members are citizens of New Jersey. *See supra*, ¶ 39.

43. Second, there is no basis to conclude that each and every "primary defendant" is a citizen of New Jersey.

44. Although J&J is a citizen of New Jersey, Plaintiffs have also sued thousands of unnamed "attorneys" retained by J&J and "corporate members" affiliated with J&J who allegedly "perpetrated, aided and abetted, or acted in concert with, in furtherance of, or in conjunction with, the others in the conduct, activities, acts, and omissions set forth herein." Compl., Caption. If even just one of these additional defendants qualifies as a "primary" defendant and is not a citizen of New Jersey, then this exception cannot possibly apply. *See Vodenichar*, 733 F.3d at 503-506 (remand appropriate under this exception "only if all primary defendants are citizens" of the state in which the case was originally filed).

45. In evaluating whether a defendant qualifies as a "primary defendant," courts consider whether the defendant would be "directly liable" to the proposed class, whether "the plaintiffs seek to hold the defendant responsible for its own actions, as opposed to seeking to have it pay for the actions of others," whether Plaintiffs have "apportion[ed] liability equally among the defendants," and whether they "seek similar relief from all defendants." *Vodenichar*, 733 F.3d at 503-505.

46. Here, Plaintiffs (i) allege that these unnamed defendants "singularly, jointly and/or in concert with others" engaged in the conduct challenged in this action; (ii) named them as defendants in every count; and (iii) seek to recover the same relief from all defendants (not

just J&J). *See* Compl. ¶¶ 42-43, 170-198; *id.*, Demands for Relief. The unnamed defendants therefore qualify as "primary" defendants. *See Chipego v. Allergan, Inc.*, 2022 U.S. Dist. LEXIS 7529, at *19 (D.N.J. Jan. 14, 2022) (holding that the "home state" exception did not apply where a non-forum state defendant "would be directly liable to the proposed class" and plaintiffs sought "the same relief … from both defendant entities"); *Torres v. CleanNet, U.S.A., Inc.*, 2014 U.S. Dist. LEXIS 155657, at *14 (E.D. Pa. Nov. 4, 2014) (same, where plaintiff named the out-of-state defendant "as a defendant in every count of the Complaint and [sought] to hold [that defendant] directly liable for reach alleged violation").

47. As noted above, the Complaint concerns conduct allegedly perpetrated by these unnamed defendants "around the country" and "across the nation." Compl. ¶¶ 2, 14. The Complaint specifically refers to conduct that occurred in relation to lawsuits pending in several states other than New Jersey, such as Ohio, Delaware, and California. Compl. ¶¶ 86-97. It necessarily follows that at least one of the unnamed defendants—such as the outside counsel that represented J&J in the actions that were not pending in New Jersey—is not a citizen of New Jersey. Accordingly, the "home state" exception does not apply.

iii. ***The "Interests of Justice" Exception Does Not Apply***

48. Lastly, 28 U.S.C. § 1332(d)(3)—the so-called "interests of justice" exception—*permits* (but does not require) a court to decline jurisdiction over a removed class action "in the interests of justice," in its discretion, under certain circumstances.

49. One necessary prerequisite for this exception is that all of the "primary defendants" must be "citizens of the State in which the action was originally filed." *Id.* As explained above, this mandatory prerequisite is not met here because, in light of the Complaint's allegations, one or more of the unnamed defendants is necessarily not a citizen of New Jersey.

*See supra*, ¶¶ 46-47.

50. Even if this mandatory prerequisite were met, the discretionary factors relevant to the "interests of justice" exception also militate in favor of retaining jurisdiction.

51. First, because resolution of closely-related (if not identical) talc personal injury claims against J&J's current and former subsidiaries and suppliers are currently the subject of *two* federal bankruptcy proceedings (regardless of the state in which those claims arose)—*see In re: LTL Management LLC*, Case No. 21-30589 (Bankr. D.N.J.); *In re: Imerys Talc Am., Inc.*, Case No. 19-10289 (Bankr. D. Del.)—the underlying controversy in this case is a "matter of national or interstate interest," 28 U.S.C. § 1332(d)(3)(A), and is not "local" to New Jersey.

52. Second, because the putative class contains citizens of numerous states other than New Jersey, this is not a case where the "claims asserted will be governed by laws of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(3)(B). Plaintiffs' primary claim concerns allegations of spoliation, which would be governed by the law of the state where the underlying lawsuit was prosecuted—not J&J's home state of New Jersey. *See Mullins v. Ethicon, Inc.*, 2016 WL 6836941, at *2-3 (S.D. W. Va. Nov. 18, 2016) (holding that spoliation claims were governed by the law of the state where the underlying lawsuit was prosecuted—not the law of the defendant's home state—because the harmful effect of the spoliation was felt in the state where the underlying litigation took place, and spoliation prohibitions exist to protect the integrity "of the underlying cause of action"). Plaintiffs' alternative claims for fraud and fraud on the court likewise would be governed by the laws of states other than New Jersey. *See, e.g.*, *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 178, 180 (3d Cir. 2014) (affirming district court's "choice of law analysis for the state consumer fraud claim," which "found that the law of the class members' home states would apply"); *Agostino v. Quest Diagnostics Inc.*, 256

F.R.D. 437, 468 (D.N.J. 2009) (holding that the "laws of the applicable 51 jurisdictions" must be applied "to Plaintiffs' common law fraud claims" when evaluating certification of putative nationwide class).

53. Third, for the reasons set forth above, New Jersey does not have "a distinct nexus with the class members, the alleged harm, or the defendants." 28 U.S.C. § 1332(d)(3)(D). Although J&J and at least one plaintiff are citizens of New Jersey, numerous class members and defendants are not citizens of New Jersey, and the alleged harm occurred in the various states where class members brought their underlying claims, not New Jersey. *See supra*, ¶¶ 22-25.

54. Fourth, for these same reasons, the "citizenship of the other members of the proposed class is dispersed among a substantial number of States," 28 U.S.C. § 1332(d)(3)(E), which further militates in favor of retaining jurisdiction.

55. In sum, although J&J does not bear the burden of establishing that CAFA's jurisdictional exceptions are inapplicable, J&J has nonetheless shown their inapplicability.

## CONCLUSION

56. For all the foregoing reasons, this action is properly removed to this Court.

57. J&J reserves the right to amend or supplement this Notice of Removal, and reserves all rights and defenses, including those available under the Federal Rules of Civil Procedure and the United States Bankruptcy Code.

**WHEREFORE**, J&J respectfully removes this action from the Superior Court of New Jersey, Law Division, Middlesex County to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed with the Superior Court of New Jersey, Law Division, Middlesex County and served upon Plaintiffs' counsel.

Dated: May 23, 2022

Respectfully submitted,

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
973-639-2032 (telephone)
973-297-2876 (facsimile)
jgarde@mccarter.com
*Attorneys for Defendants, Johnson & Johnson*

By: ***s/ John C. Garde***
John C. Garde
A Member of the Firm

**CERTIFICATE OF SERVICE**

I certify that on May 23, 2022, I caused to be e-filed a copy of this Notice of Removal upon the following counsel of record via ECF and electronic mail at the following addresses:

Cohen, Placitella & Roth, P.C.
Christopher M. Placitella, Esq.
127 Maple Avenue
Red Bank, New Jersey 07701
(732) 747-9002
cplacitella@cprlaw.com
*Attorney for Plaintiff*

*s/ John C. Garde*
John C. Garde